ACKER *against* LEDYARD.

Under the provisions of the revised statutes authorizing a landlord to whom rent was due, to give notice thereof to a sheriff having an execution levied upon goods of the tenant liable to distress, (1 *R. S.* 746, § 12 *et seq.*,) the court out of which the execution issued had power, in case of a contest as to the moneys raised from the goods, to authorize their payment into court, to await its further order.

Such an order, and the payment of the moneys into court, would protect the sheriff in an action commenced after the application.

This was an appeal from a judgment of the supreme court upon a writ of error to the superior court of the city of New York. The facts necessary to an understanding of the case are contained in the opinion delivered in the supreme court, reported in 8 Barbour, 514. The case was argued in this court by

N. B. BLUNT for appellant, and

G. R. J. BOWDOIN for respondents.

The opinion of the court was delivered by MASON, J., who, after an examination of the points decided by the supreme court, arrived at the conclusions of that court, excepting in relation to the question, whether the order of the court of common pleas, out of which the execution to the sheriff issued, allowing him to pay the moneys collected by him into court, was a protection to him. In relation to that question his opinion was as follows:

The only remaining question presented by the motion for a nonsuit was, whether the order of the court of common

Acker *against* Ledyard.

pleas allowing the sheriff to pay this money into court, and the payment thereof by the sheriff operated to discharge him from liability in this action. The mandate of the writ of fieri facias is that the sheriff have the money in court on the return day, to render unto the plaintiff for his debt and damages, and such was the mandate of the writ in question. Chief justice Marshall, in discussing the duty of the sheriff, under such a process, in the case of *Turner* v. *Fudell*, 1 *Cran. R.* 117, 128, 136, says: "Originally it was regularly the duty of the officer to have the money in court," and he adds "it has been held that not even payment to the creditor himself could excuse the nonperformance of that duty." The rigor of the rule, he says, has been considerably relaxed, while the form of the writ remains the same. He adds, there is no excuse for the sheriff in omitting his duty to have the money in court on the return day, unless it shall have been paid to he creditor Bacon says, upon a *Fi. Fa.* the goods are to be sold and the money, in strictness, is to be brought into court. (*Bacon's Abr. Execution, C.* 3 *Vol. page* 703; *Bouv. Ed.*) It was held in the case of *Brewster* v. *Van Ness*, 18 *J. R.* 133, that it is the duty of the sheriff to pay over money collected on a fieri facias to the plaintiff without a demand, or to pay it into court; and the same doctrine is reiterated in the case of *Dygert* v. *Crane*, 1 *Wend.* 539. In the latter case the court say, "If the sheriff returns the execution satisfied, and that he has brought the money into court, before any suit is commenced against him, he would not be liable to an action." They add, however, that "after an action is commenced against a sheriff for money received by him upon an execution, he stands upon the same footing as other debtors, and can not discharge himself simply by bringing the money into court."

The evidence shows that the capias by which this suit was commenced was delivered to the coroner on the first day of June, 1840, but it does not appear when it was

served. The service of the capias, and not the delivery thereof to the officer, is the commencement of the action. (*Carruth* v. *Church*, 6 *Barb. R.* 504.) The respondent failed to show, therefore, that this suit was commenced before the money was paid into court, and were this simply a case of money collected on execution, I apprehend there could be little doubt of the sheriff's right to pay it into court, and find a complete protection under the law in so doing. The respondent's claim to this money does not arise from her being a judgment and execution creditor, but was given by statute, 1 *R. S.* 746, §§ 12 and 13. Upon the receipt of her affidavit, and notice stating the amount of rent due, the sheriff was required to levy the amount of the rent so claimed to be due in addition to the sum directed to be raised on such execution, and the statute then provided that the sheriff should pay such additional amount to the landlord, or his agent. By the 14th section it was enacted that in case there should be a deficiency of goods and chattels to satisfy both such execution and rent, the amount levied should be first applied to the satisfaction of such rent, and the balance, if any, upon such execution. The affidavit and notice of the landlord were in the nature of legal process. (*Millard* v. *Robinson*, 4 *Hill R.* 604; *Olcott* v. *Frazier*, 5 *Hill R.* 565.) And the sheriff ordinarily was to pay the money collected thereon over to the landlord or his agent. This was the requirement of the statute. The question arises, then, did the order of the court allowing the sheriff to pay this money into court relieve him from this liability. The court granted an order requiring both Bexly, the plaintiff in the execution, and Mrs. Ledyard to show cause, on a day named, why the sheriff should not have leave to pay the money into court, to abide the order of the court. This order was served upon Mr. Gray, the attorney and agent of Mrs. Ledyard, she being absent in Europe at the time, and Mr. Greig, an attorney of the court, appeared before it, and in behalf of Mrs. Ledyard opposed the application. After the order to

show cause was served on him, and before the return day, he also, as attorney of Mrs. Ledyard, made out the capias by which the suit was commenced, and sent it to the coroner, and it was actually delivered to the coroner on the day for showing cause, and but a few minutes before the hour appointed. The authority of Greig to appear on the motion does not appear to have been questioned; and besides, the doctrine has been repeatedly recognized in the courts of this state, that when an attorney of the court takes upon himself to appear for a party, the court will not inquire whether he had sufficient authority. (*Jackson* v. *Stewart*, 6 *John.* 34, 39; *Denton* v. *Noyes*, *id.* 295; *Grazebrook* v. *McCreedy*, 9 *W. R.* 437, 440, 441.) In the case of *Denton* v. *Smith*, where an attorney of the court appeared for a defendant, against whom a writ had been issued, but not served, and without any authority from the party, and confessed a judgment which was entered up in vacation, the court held the judgment regular, and refused to set it aside. The same doctrine is laid down by the supreme court of Pennsylvania, in the case of *McCullough* v. *Guertner*, 1 *Binn. R.* 214. The same rule obtains in the *Kings Bench* 1 *Salk. R.* 86. It is not necessary to place the case upon this ground, for the authority of the attorney in this case does not seem to have been questioned upon the trial of the cause.

I think we may therefore assume that the court had jurisdiction of the parties, and so far as Bexly were concerned his executions, and they certainly had jurisdiction of the process and the subject matter, and it seems to me that it can not be doubted that as regards the claim of Mrs. Ledyard, the court also had jurisdiction. Her notice and affidavit of rent due, although in the nature of process were not independent process. They were dependent upon the execution, and if the plaintiff had withdrawn the execution, the sheriff would not have been justified in selling the goods to pay the rent; and it was held in the case of (*Harshell* v. *Kempson* 2 *Wels. R.* 140) that the landlord might apply to the

court for an order that the sheriff pay the proceeds of the goods to him to satisfy his rent. The payment of the money into court by the sheriff, does not deprive Mrs. Ledyard of her claim to it if any she has. The court is bound to award it to the party entitled to it, and where there is reasonable doubt whether the landlord or the plaintiff in the execution is entitled to it, I think the law ought to afford this measure of protection to the sheriff.

Here was a contest between two adverse claimants as to these moneys, and the sheriff would have been personally liable if he made a wrong determination and delivered the moneys to the wrong party. I think the court out of which the process in such a case issues, may very properly make an order for the payment of the moneys into court and that when the sheriff has complied with such order he has done his whole duty. If this be so, it is idle to say that the payment of the moneys into court affords no protection to sheriff, for the reason that the respondent has shown upon the trial of this cause that she was entitled to a part of it. If she is entitled to it, the money in court is hers, and she should have gone there and claimed it. If the views above expressed are correct, then the court below should have nonsuited the respondent upon this ground.

It is therefore unnecessary to consider the charge to the jury. It is quite evident, however, that this exception to the charge is not well taken: there are twenty distinct propositions in the charge, and the defendent excepted to each and every part thereof. This exception is quite too general to be available to the defendant, as the charge is concededly right on many of the propositions submitted to the jury. The judgment of the court below must be reversed and a new trial granted, with costs to abide the event.

All the judges concurring.

Ordered accordingly.