ORLANDO T. CARPENTER, as Administrator with the Will Annexed of CAROLINE L. CARPENTER, Deceased, Respondent, *v.* THE NEW YORK TRUST COMPANY and Others, Appellants.

First Department, November 3, 1916.

*Trial — issues limited by stipulation — attorney and client — presumption of authority of attorney.*

Where, under a stipulation and agreement of compromise, the only question reserved for trial is that of the ownership of a particular fund which is to be litigated between the plaintiff and one of the defendants, and the complaint tenders no issue involving the question of attorneys'

lien or the amount of their fees, the lien of the plaintiff's attorneys or the validity of their contract with the plaintiff cannot be determined on the trial.

Where the court, under such circumstances, has adjudged the fund to belong to the plaintiff, it may direct payment to him, subject to the lien of his attorneys.

Rule as to the presumption of authority on the part of an attorney to represent his client applied.

APPEAL by the defendants, The New York Trust Company and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of June, 1916, upon the decision of the court after a trial at the New York Special Term.

The judgment awarded to plaintiff, subject to the lien of his attorneys, the sum of $32,500 received from defendant, The Kensico Cemetery, in settlement of all claims pending between it and the estates of Caroline L. Carpenter and Reese M. Carpenter, and directed that half of said sum be paid to said attorneys under their contract with the plaintiff.

*Michel Kirtland,* for the appellants.

*James Dunne,* for the respondent.

DOWLING, J.:

This action was originally brought by plaintiff as administrator with the will annexed of Caroline L. Carpenter, deceased, against the New York Trust Company and the Kensico Cemetery to have himself declared to be the equitable owner and entitled to 931 land shares and $32,585 in certificates of indebtedness of the Kensico Cemetery pursuant to a certain subscription agreement wherein the New York Trust Company was trustee; to have the sum of $44,901.39 due the said estate on account of the hiring and use of certain horses by the cemetery applied so far as it might be needful to the amount still due and owing by Caroline L. Carpenter upon her said subscription; that upon the payment of the balance due on the subscription an additional 576 land shares and an additional $20,160 indebtedness be adjudged to be the property of the plaintiff and issued to him as administrator; that the cemetery account for a balance of $2,362.56 claimed to remain due

plaintiff after all said shares and certificates were issued; and for a temporary injunction enjoining the defendants from disposing of said shares or certificates of indebtedness pending the trial of the action. Answers were interposed by both defendants.

On April 17, 1916, through the professional skill and services of plaintiff's attorneys, a settlement was made under which the Kensico Cemetery agreed to pay into the New York Trust Company the sum of $32,500 to the credit of this action, and it was agreed that "in respect to the ownership of this fund, the estates of Caroline L. Carpenter and the estate of Reese Carpenter, respectively, shall litigate these questions between themselves in this action and discontinue the same without costs as against the Kensico Cemetery and the New York Trust Company." Although the estate of Reese Carpenter was not an original party to the action the Kensico Cemetery in its amended answer had set up that Reese Carpenter in his lifetime, and his estate after his death, were the sole owners of the subscription agreement in question which stood in plaintiff's name and entitled to all rights thereunder. On March 24, 1916, an order was made directing that the executors of Reese Carpenter, deceased, be made parties defendant with leave to serve their answer, and such answer was served by them April 8, 1916, setting forth that Reese Carpenter was the sole executor, legatee and devisee of his deceased wife, Caroline L. Carpenter, and that as such sole beneficiary he took possession of and became vested with all her property, including all rights under the subscription agreement in question. The agreement of settlement further provided for the execution of releases by both estates to the Kensico Cemetery; for the discontinuance of certain appeals; for the entry of a certain order and the modification of a decision and judgment; and for the assignment by both estates to the cemetery of all their rights in and under the subscription agreement. The settlement was made subject to the approval of the surrogate of Westchester county, and such approval having been given an order was duly made and entered April 22, 1916, discontinuing this action and providing, among other things: "Such withdrawal and discontinuance to be without prejudice to the

rights of plaintiff and the other defendants herein, in respect of such issues and matters as remain to be litigated and determined between them in the further prosecution of this action."

On May 19, 1916, this action came on for trial, the appearances being James Dunne, Esq., and I. J. Beaudrias, Esq., for the plaintiff, and Michel Kirtland, Esq., for the defendant, the estate of Reese Carpenter, deceased. Under the stipulation and agreement of compromise the question to be litigated was the ownership of the fund of $32,500 created under the agreement. After the introduction of the necessary documentary proof to establish plaintiff's right to the possession of the fund, James Dunne was called as a witness and examined by his associate, Mr. Beaudrias, as to the professional services rendered by them to the plaintiff in this action and as to their agreement with him whereby they were to receive for their services fifty per cent of any land shares or certificates of indebtedness recovered by plaintiff in this action, which fifty per cent he thereby assigned to them. Defendants' counsel, so far as the record shows, took no part in the examination of the witness until he interposed an objection, after the direct testimony had proceeded for some time, to the witness' statement of the nature of another action. The court then said: "Let me ask you this question, will it be stipulated that in the event of my determining that this witness, Mr. Dunne, is entitled to compensation out of this fund, that he will be entitled to receive what his contract calls for? Mr. Kirtland: We cannot so stipulate. On the contrary, at the close of his testimony, I am going to move to strike it out as not relevant to this proceeding. I am not going to cross-examine him on it, I am going to take the position and stand on it that all of the testimony as to his services here has no connection and no relevancy in this action. I am going to stand upon that position. The Court: If that is the position you are going to take, it is not necessary for me to take proof of all the services he has rendered. You are not attacking the contract? Mr. Kirtland: I am not going to attack anything. The Court: Then we need no further proof. Now, I will hear your motion. Mr. Kirtland: I move now to strike out now Exhibit 7 heretofore offered in evidence which is the paper signed by Orlando

T. Carpenter as administrator and all the testimony given by Mr. James Dunne as to his services in this particular case and other cases, upon the ground that such contract and such services are not one of the issues in this action to be tried, not relevant thereto, that the administrator had no power to make such a contract binding upon the estate and there is no dispute between him and his client and the proper forum to determine the proper allowance to be allowed to the administrator is in the Surrogate's Court, it is not one of the issues in this case." Defendants' counsel offered no proof on the question of the value of the attorneys' services, but simply introduced such documentary evidence as he deemed necessary to establish his client's right to the fund. The learned court has made a decision and a judgment has been entered thereupon whereby not only is the plaintiff adjudged to be the owner of the fund in dispute, but it has been determined that Dunne and Beaudrias, as attorneys for the plaintiff, are the assignees of fifty per cent of the fund, have an attorney's lien to that extent upon the fund, and the fund is directed to be distributed by the New York Trust Company, one-half to the plaintiff and one-half to his attorneys.

We find no reason for disturbing the conclusion reached that this fund belongs to plaintiff as administrator with the will annexed of Caroline L. Carpenter, deceased. Such conclusion is warranted by the facts proven and the law applicable thereto. We are of the opinion, however, that the question of the lien of the plaintiff's attorneys or the validity of their contract with the plaintiff could not be properly determined in this action in view of the state of the pleadings and the terms of the agreement of settlement. The complaint tendered no issue involving the question of the attorneys' lien or the amount of their fees. When the settlement was made between the parties the only question reserved for trial was that of the ownership of the fund which was to be litigated between the two estates. There was no suggestion in the agreement that the question of the attorneys'-fee or lien was one of the remaining questions to be litigated. Had the parties consented thereto the question of the attorneys' lien and its amount could have been litigated in this action, but the sole remaining defendants never con-

sented to litigate that question, but on the contrary objected to its being considered and disposed of by the court. The trial court expressly refused to find plaintiff's proposed finding of fact numbered " XII," which had it been found would have shown that defendants had agreed to litigate the attorneys' lien for services and its proper amount. Under such conditions all that the court could do was to determine the ownership of the fund as between the two estates, and having properly adjudged it to belong to the plaintiff the court could go no further than to direct the payment of the fund to the plaintiff who was to hold it subject to the lien of his attorneys, under their contract, such declaration being simply an adjudication that there was an attorneys' lien under the contract without determining its amount. This will result in a judgment awarding the fund to the plaintiff, subject to the lien of his attorneys, who then may take such steps to enforce their lien by action or proceeding as they may be advised, and the reversal of the decision and judgment so far as they fix and determine the amount of the attorneys' lien is without prejudice to any action or proceeding which they may take in order to enforce the same.

There is another consideration which might have rendered this course desirable, and that is that the plaintiff himself was not called upon the trial of the action, is not shown to have had any knowledge of its pendency, and was represented by the same attorneys upon the trial who thereat sought to establish their lien and its amount under the contract with him. But that objection is met by the fact that defendants upon the trial did not attack the contract by their objection taken at the close of the trial, admitted there was no dispute between plaintiff and his attorneys, and appellants' brief on this appeal admits that " plaintiff has not disputed the contract with his attorney." Under such condition the usual rule of presumption of authority upon the part of the attorney to represent his client would apply. (*Acker* v. *Ledyard*, 8 N. Y. 62.) There is no suggestion that the client does not recognize and is not willing to be bound by his contract with his attorneys who have succeeded in creating this fund to which their lien attaches; on the contrary, even without the proposed finding that sufficiently appears. So that defendants, not having

384   People ex rel. Empire Leasing Co. *v.* Mecca R. Co.

First Department, November, 1916.          [Vol. 174.

attacked the validity of the contract between plaintiff and his attorneys upon the trial, the modification of the judgment must proceed upon the sole ground that the question of the existence or amount of the attorneys' lien under the contract with plaintiff was not before the court for decision, not being within the pleadings on the compromise agreement.

The decision and judgment appealed from will be modified by adjudging that the fund be turned over to the plaintiff, without prejudice to the bringing of any action or proceeding· to establish and enforce their lien by the attorneys. In all other respects the judgment will be affirmed, with costs to the respondent.

Clarke, P. J., McLaughlin, Laughlin and Page, JJ., concurred.

Judgment modified as stated in opinion and as modified affirmed, with costs to respondent. Order to be settled on notice.