AARON L. SIEGEL, Respondent, v KENTUCKY FRIED CHICKEN OF LONG ISLAND, INC., Appellant.

Second Department, May 6, 1985

APPEARANCES OF COUNSEL

*Katz, Kleinbaum, Farber & Karson* (*Eugene I. Farber* and *Peter F. Dwyer* of counsel), for appellant.

*Bruce D. Mencher* for respondent.

**OPINION OF THE COURT**

GIBBONS, J.

The only issue which divides the court on this appeal is whether a lawyer's letter is sufficient to give notice to a tenant of its landlord's decision to terminate the tenancy based on the tenant's alleged default, in accordance with a paragraph of the lease requiring the service of such a notice by the "Landlord".

Under the circumstances of this case, the service of such a notice on behalf of the landlord was legally insufficient to terminate the existing tenancy, and the order appealed from should therefore be reversed, the order of the District Court reinstated, and the proceeding dismissed.

Pursuant to a certain paragraph (number 17) of a lease granting the "Landlord" the right to serve his tenant with a five-day notice to cure certain alleged breaches of the underlying covenants, an attorney, Bruce D. Mencher, sent a letter to the appellant, dated January 25, 1982, in which he identified himself as the landlord's attorney and stated the following:

> "Mr. Siegel [the landlord] has authorized and instructed me to advise you that you are in default of several provisions of the said lease, as follows * * *
>
> "Pursuant to the provisions of paragraph '17' of the said lease, this letter will serve as the five (5) day written notice of default to you. In the event that you shall fail to correct the said defaults within five (5) days, it is the intention of my client to serve a written three (3) day notice of cancellation of lease upon you, and upon the expiration of said three (3) days, this lease will be cancelled and will end and expire * * *
>
> "Very truly yours,
> "[Bruce D. Mencher's signature]
> "Bruce D. Mencher".

A notice of termination dated February 1, 1982 was thereafter sent to the appellant by Mr. Mencher, in which he reiterated his status as the landlord's attorney and wrote:

"Mr. Siegel has advised me that, despite my letter of January 25, 1982, you continue to be in default of those terms and provisions of the lease of which you were informed.

"Accordingly, and pursuant to the instructions and directions of my client, please be advised that this letter will serve as the three (3) days' notice of cancellation of said lease (pursuant to the provisions of paragraph '17' thereof), and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the date of February 4, 1982 was the date specified and fixed in the lease for the end and expiration of the lease and the term thereof. In such event, and on such date, you shall quit and surrender the premises to the Landlord".

On or about February 5, 1982, the landlord commenced this summary proceeding to recover possession of the leasehold premises, and on May 28, 1982, the District Court of Nassau County, First District (Capilli, J.), granted a motion to dismiss the proceeding, holding that the notice of termination sent by counsel was "defective as a matter of law". On appeal, the Appellate Term reversed and reinstated the petition on the ground, *inter alia,* that the notice of termination was not per se invalid "inasmuch as [it] adequately disclosed [Mr. Mencher's] authority and purported to emanate from [the] landlord". We cannot agree.

In reversing the order of the District Court, Appellate Term purported to rely on the same line of cases which had been cited by nisi prius and now is criticized by the dissent as holding that a notice of termination is ineffective when sent by an attorney for the landlord rather than the landlord himself (*see, e.g, 185 E. 85th St. Co. v Gravanis,* NYLJ, Jan. 21, 1981, p 6, col 2; *Granet Constr. Corp. v Longo,* 42 Misc 2d 798; *747 S. Blvd. Realty Corp. v Wein-Rose, Inc.,* 201 Misc 552; *Mesaba Constr. Co. v 46th St. Serv. Sta.,* 68 NYS2d 751). In our view, however, the foregoing formulation of the rule by our dissenting colleague is much too broad, and ought to be restated as follows: a notice of termination signed by an agent or attorney who is not named in the lease as authorized to act for the landlord in such matters, and which is not authenticated or accompanied by proof of the latter's authority to bind the landlord in the giving of such notice, is legally insufficient to terminate the tenancy (*see, 185 E. 85th St. Co. v Gravanis, supra; Granet Constr. Corp. v Longo, supra,* at pp 802-803; *747 S. Blvd. Realty Corp. v Wein-Rose, Inc., supra; Matter of Lendon Realty Corp. [Weber],* 193 Misc 120; *Mesaba Constr. Co. v 46th St. Serv. Sta., supra; see also, Alpert v Polonsky,* 193 NY 53; *Bannerman v Hughes,* 188 NYS 410). With this rule we whole-heartedly agree.

*Reeder v Sayre* (70 NY 180, 188) is not to the contrary, as the court therein merely noted, in dicta, that "[a] notice to quit may be given, either by the landlord or his authorized agent[s]", but did not purport to consider the manner, if any, by which the authority of such persons need be shown (*cf. Mann Theatres Corp. v Mid-Island Shopping Plaza Co.,* 94 AD2d 466, 474, *affd* 62 NY2d 930). More nearly in point for present purposes is the *Reeder* court's earlier observation that since "[t]he tenant is [required] to act upon [such] notice at the time it is given * * * it ought to be such a one as he can act upon with safety" (*Reeder v Sayre, supra,* at pp 187-188).

Accordingly, where, as here, the lease provides that certain of the rights and immunities arising thereunder may be exercised and enjoyed by either the "Landlord *or Landlord's agents"*, and where it elsewhere designates a named third party, other than Mr. Mencher, as the landlord's attorney, it appears only reasonable that a forfeiture provision calling for cancellation of the lease upon only three days' written notice emanating specifically from the "Landlord"[*] should be strictly construed against its drawer to require unequivocal notice by either the landlord himself or his authorized agent, accompanied by proof of the latter's authority to bind the landlord in the giving of such notice (*see, e.g., 185 E. 85th St. Co. v Gravanis, supra; Granet Constr. Co. v Longo, supra; Mesaba Constr. Co. v 46th St. Serv. Sta., supra; see also, Leighton's Inc. v Century Circuit,* 95 AD2d 681, 682; *Dubois & Son v Goldsmith Bros.,* 273 App Div 306; *cf. Mann Theatres Corp. v Mid-Island Shopping Plaza Co., supra*). Under such circumstances the mere assertion of authority on the face of the notice by a total stranger to the transaction that he is the landlord's attorney and that he is authorized to act on the latter's behalf cannot be deemed to provide the tenant with the surety of notice to which he is contractually entitled (*see, 185 E. 85th St. Co. v Gravanis, supra; Granet Constr. Corp. v Longo, supra,* at pp 802-803; *Mesaba Constr. Co. v 46th St. Serv. Sta., supra; cf. Reeder v Sayre, supra,* at p 187).

Cases such as *Acker v Ledyard* (8 NY 62) and *Matter of Locke* (21 AD2d 248, *lv denied* 15 NY2d 482), both relied on by the dissenter, are distinguishable on their facts, as the question in those cases concerned the authority of an attorney who had appeared for a client in a pending action to act on the latter's behalf. Confirming the existence of that authority, the Court of Appeals noted that the foregoing would be presumed from the fact of the attorney's appearance, stating, "when an attorney * * * takes [it] upon himself to appear [in court] for a party, the court will not inquire [as to] whether he ha[s] sufficient authority" to do so (*Acker v Ledyard, supra,* at p 65; *see also, Carpenter v New York Trust Co.,* 174 App Div 378, *affd* 221 NY 719). In light of counsel's traditional status as an officer of the court (*see, People ex rel. Karlin v Culkin* 248 NY 465, 470-471), there is ample reason to do so. Moreover, while we subsequently did hold in *Bismark v Incorporated Vil. of Bayville* (21 AD2d 797) that the signature of an attorney to a protest filed on behalf of a client-landowner pursuant to former Village Law § 179 (1) was

---

[*] Following service of a five-day written notice to cure also emanating from the "Landlord".

the legal equivalent of the statutorily required owner's signature, that case clearly did not involve the proper construction of the forfeiture provision of the lease, and, by the court's citation to 95 ALR 1085 (Ann., "Scope and import of term 'owner' in statute relating to real property"), appears to have turned, at least in part, upon the meaning of the term "owner" as employed in the statute. By established precedent, the forfeiture provisions of leases are to be strictly construed (*see, Leighton's Inc. v Century Circuit, supra,* at p 682; *Dubois & Son v Goldsmith Bros., supra,* at p 309; *747 S. Blvd. Realty Corp. v Wein-Rose, Inc.,* 201 Misc 552, *supra;* 2 Rasch, New York Landlord & Tenant, Summary Proceedings § 760, at 217 [2d ed]; *cf. Chinatown Apts. v Chu Cho Lam,* 51 NY2d 786).

Finally, while it may be true that a tenant who is in default under the terms of his lease has no cause to complain about the messenger who delivers his landlord's notice to cure, the fact remains that he *is* entitled to know whether his landlord is insisting upon the strict performance of all of the covenants of the lease, i.e., whether the only person who is entitled to insist upon full compliance actually desires that these often technical defaults be cured. In addition, and more important, a tenant is also entitled to know "with safety" (*Reeder v Sayre, supra,* at pp 187-188) whether the notice to terminate emanates from a person with the requisite authority, for if he acts upon such notice to vacate the premises, he may later be found to have acted at his peril should the landlord prevail in a claim that the notice was unauthorized. Viewed from this perspective, it is reasonable to inquire as to the plight of a tenant who, in pursuance of such a notice and at great personal expense, quits the premises and changes his location, only to be sued by his former landlord for unlawfully terminating the tenancy. In this regard, it is not at all certain, as the dissenter appears to assume, that a landlord will always be estopped from asserting the lack of authority on the part of the person purporting to be his agent or attorney, as the extrajudicial declarations of an agent generally are not admissible against his principal "either to establish the fact of his agency or the nature or extent of his authority * * * [nor] can he create authority in himself to do a particular act by its performance or by asserting his authority to do it" (*Taylor v Commercial Bank,* 174 NY 181, 191; *Moore v Leaseway Transp. Corp.,* 65 AD2d 697, 698, *affd* 49 NY2d 720; *Ray D. Lillibridge, Inc. v Johnson Bronze Co.,* 220 App Div 573, *affd* 247 NY 548; *Leary v Albany Brewing Co.,* 77 App Div 6; *see also,* Richardson, Evidence § 253, at 223 [Prince 10th ed]). Moreover, it is far from clear that a tenant should be subjected to the

associated risk where his contract is worded to obviate the problem by requiring a notice of termination emanating directly from the "Landlord". It is for these reasons, among others, that both appellate and trial courts have generally held that a notice of termination signed by an agent or attorney who is not named in the lease as authorized to act for the landlord in such matters, and which is not authenticated or accompanied by proof of the agent's or attorney's authority to bind the landlord in the giving of such notice, is legally insufficient to terminate the tenancy (*see, 185 E. 85th St. Co. v Gravanis, supra; Granet Constr. Corp. v Longo,* 42 Misc 2d 798, *supra; 747 S. Blvd. Realty Corp. v Wein-Rose, Inc., supra; Matter of Lendon Realty Corp.* [*Weber*], 193 Misc 120, *supra; Mesaba Constr. Co. v 46th St. Serv. Sta.,* 68 NYS2d 751, *supra; cf. Mann Theatres Corp. v Mid-Island Shopping Plaza Co,* 94 AD2d 466, *affd* 62 NY2d 930, *supra*). As has already been indicated, we fully ascribe to this rule.

Accordingly, since the attorney giving notice in the case at bar was not named in the lease, and since the notice of termination was not authenticated or accompanied by proof of the latter's authority to bind the landlord in the giving of such notice, it follows that the District Court did not err in ordering that the proceeding be dismissed. As the Court of Appeals noted in *Chinatown Apts. v Chu Cho Lam* (51 NY2d 786, 787, *supra*), "[T]he right to terminate the tenancy pursuant to the terms of the lease [is] dependent upon [the] service of an adequate notice". The subsequent order of Appellate Term reversing the order of the District Court and reinstating the petition should therefore be reversed, the order of the District Court reinstated, and the petition dismissed.

TITONE, J. P. (dissenting). In this summary proceeding brought to recover possession of real property, the tenant appeals, by our leave, from an order of the Appellate Term, which reversed an order of the District Court of Nassau County, First District, dismissing the proceeding, and remitted it to the District Court for trial. The basic question is whether the notices to cure and to quit, a condition precedent to suit, are ineffective because they were sent by the attorney for the landlord. Although several nisi prius decisions have so held, I would reject them and affirm the order appealed from.

In 1972, petitioner landlord and tenant Kentucky Fried Chicken entered into a lease for vacant land in Williston Park, New York, upon which the tenant was to construct a Kentucky Fried Chicken outlet. The lease was for an initial term of 20 years, with two options to the tenant to renew for additional 10-year periods. The lease provides that service by the landlord of a

five-day notice to cure a default is a condition to terminating the lease based on such a default. Pursuant to paragraph 27 of the lease: "a bill, statement, notice or communication which Landlord may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided".

A letter dated January 25, 1982, and sent by certified mail, stated in pertinent part:

> "Gentlemen:
>
> "Please be advised that I am the attorney for Aaron L. Siegel, your Landlord, pursuant to a certain lease dated July 1, 1972.
>
> "Mr. Siegel [the landlord] has authorized and instructed me to advise you that you are in default of several provisions of the said lease, as follows * * *
>
> "Pursuant to the provisions of paragraph '17' of the said lease, this letter will serve as the five (5) day written notice of default to you. In the event that you shall fail to correct the said defaults within five (5) days, it is the intention of my client to serve a written three (3) day notice of cancellation of lease upon you, and upon the expiration of said three (3) days, this lease will be cancelled and will end and expire * * *
>
> > "Very truly yours,
> > "[Bruce D. Mencher's signature]
> > "Bruce D. Mencher"
>
> "BDM:bm
> "Certified Mail, Return Receipt
> "Requested * * *
> "cc. Aaron L. Siegel".

Mencher did not previously represent the landlord with respect to the tenant and the lease. The lease referred to a Morris Deutsch as attorney for the landlord. Other than the statements in the letter, the letter was accompanied by no proof that Mencher had authority to represent the landlord.

On February 1, 1982, Mencher sent a notice of termination, saying:

> "Gentlemen:
>
> "Please be advised that I am the attorney for Aaron L. Siegel, your Landlord, pursuant to a certain lease dated July 1, 1972.
>
> "Mr. Siegel has advised me that, despite my letter of January 25, 1982, you continue to be in default of those terms and provisions of the lease of which you were informed.
>
> "Accordingly, and pursuant to the instructions and directions of my client, please be advised that this letter will serve as the three (3) days' notice of cancellation of said lease (pursuant to the provisions of paragraph '17' thereof), and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the date of February 4, 1982 was the date specified and fixed in the lease for the end and expiration of the lease and the term thereof. In such event, and on such date, you shall quit and surrender the premises to the Landlord.
>
> > "Very truly yours,
> > "Bruce D. Mencher".

On February 5, 1982, the landlord commenced a summary holdover proceeding. The District Court dismissed the petition "upon the grounds that the lease has not been properly terminated since petitioner's notice of termination is defective as a matter of law". The Appellate Term reversed, holding that "the sending of the instant notice to cure and notice of termination by landlord's attorney to tenant did not render them invalid per se, inasmuch as they adequately disclosed authority and purported to emanate from [the] landlord".

As the majority notes, several nisi prius decisions have held that since a tenant is entitled to an unequivocal notice, it should not be placed in a position of "peril" and, therefore, a notice to terminate is ineffective when it is sent by the attorney for the landlord (*e.g., 185 E. 85th St. Co. v Gravanis,* NYLJ, Jan. 21, 1981, p 6, col 2; *Granet Constr. Corp. v Longo,* 42 Misc 2d 798, 803). We recently questioned those cases in *Mann Theatres Corp. v Mid-Island Shopping Plaza Co.* (94 AD2d 466, 474, *affd* 62 NY2d 930). I would now disapprove them in their entirety.

Under settled principles, an action taken by an attorney is presumed to have been taken by and at the instance of the client

(*Acker v Ledyard*, 8 NY 62; *Matter of Locke*, 21 AD2d 248, 252, *lv denied* 15 NY2d 482; *Carpenter v New York Trust Co.*, 174 App Div 378, 383, *affd* 221 NY 719). That presumption cannot be overcome by the "mere suggestion" of the attorney for the adversary that such authority is lacking (*Buxbaum v Assicurazioni Generali*, 34 NYS2d 480, 482, *affd* 264 App Div 855; 6 NY Jur 2d, Attorneys at Law, § 83; *but see, NRK Mgt. Corp. v Donahue*, 109 Misc 2d 601) and, in the absence of fraud, an attorney's authority cannot be questioned by the client because of the want of specific authority to do the act performed (*Clinton v New York Cent. & Hudson Riv. R. R. Co.*, 147 App Div 468, 470; 1 Carmody-Wait 2d, NY Prac § 3:83).

In my view, our decision in *Bismark v Incorporated Vil. of Bayville* (21 AD2d 797) is squarely on point. In that case, in an action to declare a zoning amendment void, an attorney, on behalf of his client (the plaintiff), made an oral and written protest against the amendment, as required by statute. In rejecting the claim that the protest was defective, we said: "The record does not indicate that, prior to such hearing, the attorney ever stated that he was authorized in writing by the plaintiff or by anyone else to sign a protest in behalf of the plaintiff, and he did not indicate that there was an outstanding power of attorney. But it is undisputed that said attorney was retained by said attorney in fact to represent the plaintiff in opposing and protesting the proposed zoning amendment. In our opinion, it must be presumed that the attorney had the power to act in plaintiff's behalf and, under the circumstances here, it should be held that, for the purposes of the statute, the attorney's signature in behalf of the plaintiff is equivalent to the owner's signature and has the same efficacy" (*Bismark v Incorporated Vil. of Bayville, supra,* at p 798). Indeed, even under the strictly construed Election Law, the signature of an attorney to a required document has been upheld (*Matter of Arens v Shainswit,* 37 AD2d 274, 278, *affd* 29 NY2d 663, on opn at App Div).

Other States emphatically reject the rule espoused by the majority. They hold that a tenant is bound by a notice from a landlord's attorney irrespective of whether proof of authority has been furnished (*e.g., Arnold v Krigbaum,* 169 Cal 143, 146 P 423; 50 Am Jur 2d, Landlord & Tenant § 1212, p 98).

Moreover, I fail to perceive any significant prejudice to the tenant. The landlord would be estopped from asserting a lack of authority. If the tenant is in violation of the lease, what difference does it make who relays that information? The tenant cannot refuse to comply on such grounds.

In creating the summary proceeding, the Legislature intended to afford a means "of obtaining a speedy determination and adjudication of disputes over the right of possession of real property" (*Cotignola v Lieber,* 34 AD2d 700, 701; *see also, Lanz v Lifrieri,* 104 AD2d 400; *Velazquez v Thompson,* 451 F2d 202; *Maxwell v Simons,* 77 Misc 2d 184, 186-187; *People ex rel. Allen v Murray,* 2 Misc 152, *affd* 138 NY 635). If that be the aim, a notice to quit should not be parsed in the manner that a common-law pleading would have been scrutinized in the days of the Year Books.

The tenant's other objections involved disputed matters of fact, not resolvable on this record. Accordingly, there should be an affirmance.

MANGANO and BROWN, JJ., concur with GIBBONS, J; TITONE, J. P., dissents and votes to affirm the order dated March 1, 1983, with an opinion.

Order dated March 1, 1983 reversed, on the law, with costs, and order of the District Court of Nassau County, First District, reinstated.